UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

EUGENE D. VANNOSKE

     Applicant,

v.                              CASE NO. 8:14-cv-1852-T-23TGW

MICHAEL D. CREWS,
Secretary, Department of Corrections,

     Respondent.
_____/

## **O R D E R**

Eugene E. Vannoske applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his convictions for trespass in an occupied structure (count one), armed trespass of a structure (count two), and battery (counts three and four), for which convictions Vannoske is imprisoned for ten years. The respondent filed his response, which is supported by fourteen exhibits. (Docs. 6 and 7) The respondent admits the application's timeliness. (Response at 4, Doc. 6) Vannoske replied. (Doc. 11)

Vannoske was charged with burglary of an occupied structure, armed trespass of a structure, and two counts of battery. (Ex. 1, at 12–16) A jury found Vannoske guilty on all four counts. (Ex. 1, at 152–53) Vannoske was sentenced both to ten years in prison and to timed served on the remaining three counts. (Ex. 1, at 166–71, Vol. 3, at 262–63)

# <u>STANDARD OF REVIEW</u>

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA")

governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th

Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly

deferential standard for federal court review of a state court adjudication, states in

pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court

interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this

Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA

prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766, 779 (2010). *See also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Vannoske's convictions and sentence. (Respondent's Ex. 4). Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Vannoske's subsequent Rule 3.850 motion to vacate. (Respondent's Composite Ex. 9) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or

"ruling" and explaining that deference is accorded the state court's "decision" or

"ruling" even if there is no "opinion" or "analysis").

Review of the state court decision is limited to the record that was before the

state court:

> We now hold that review under § 2254(d)(1) is limited to the
> record that was before the state court that adjudicated the claim
> on the merits. Section 2254(d)(1) refers, in the past tense, to a
> state-court adjudication that "resulted in" a decision that was
> contrary to, or "involved" an unreasonable application of,
> established law. This backward-looking language requires an
> examination of the state-court decision at the time it was made. It
> follows that the record under review is limited to the record in
> existence at that same time, i.e., the record before the state court.

*Pinholster*, 131 S. Ct. at 1398. Vannoske bears the burden of overcoming by clear

and convincing evidence a state court factual determination. "[A] determination of

a factual issue made by a State court shall be presumed to be correct. The applicant

shall have the burden of rebutting the presumption of correctness by clear and

convincing evidence." 28 U.S.C. § 2254(e)(1). This presumption of correctness

applies to a finding of fact but not to a mixed determination of law and fact. *Parker v.

Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001). The state

court's rejection of Vannoske's post-conviction claims warrants deference. (Order

Denying Motion for Post-Conviction Relief, Respondent's Ex. 9 and 12).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Vannoske claims ineffective assistance of counsel, a difficult claim to sustain.

"[T]he cases in which habeas [applicants] can properly prevail on the ground of

ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct

on the facts of the particular case, viewed as of the time of counsel's conduct." 466

U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified

acts or omissions were outside the wide range of professionally competent

assistance." 466 U.S. at 690.

Vannoske must demonstrate that counsel's alleged error prejudiced the defense

because "[a]n error by counsel, even if professionally unreasonable, does not warrant

setting aside the judgment of a criminal proceeding if the error had no effect on the

judgment." 466 U.S. at 691–92. To meet this burden, Vannoske must show "a

reasonable probability that, but for counsel's unprofessional errors, the result of the

proceeding would have been different. A reasonable probability is a probability

sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation

of law and facts relevant to plausible options are virtually unchallengeable; and

strategic choices made after less than complete investigation are reasonable precisely

to the extent that reasonable professional judgments support the limitations on

investigation." 466 U.S. at 690–91. Vannoske cannot meet his burden merely by

showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have
> done. Nor is the test even what most good lawyers would have
> done. We ask only whether some reasonable lawyer at the trial
> could have acted, in the circumstances, as defense counsel acted
> at trial . . . . We are not interested in grading lawyers'
> performances; we are interested in whether the adversarial process
> at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make *reasonable* investigations or make a *reasonable* decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under Section 2254(d) Vannoske must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States

or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a applicant to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential *Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

The state court conducted an evidentiary hearing and denied Vannoske's claims (Response Ex. 9, at 143):

> [Vannoske] failed to establish deficient performance on the past or former trial counsel, Mr. Jones. *See Strickland*, 466 U.S. at 686; *see also Taylor v. State*, 87 So. 3d 749, 758 (Fla. 2012) ("mere unhappiness or anger with the representation of counsel, or disagreement with regard to counsel's strategic decisions, does not render counsel ineffective."), *citing McKenzie v State*, 29 So. 3d 272, 282–83 (Fla. 2010). Furthermore, the Court finds that Defendant has also failed to establish that there was a reasonable probability that the result of the trial would have been different. *See Strickland*, 466 U.S. at 694. Consequently, Defendant is not entitled to relief.

Because the state court correctly recognized that *Strickland* governs each claim of ineffective assistance of counsel, Vannoske cannot meet the "contrary to" test in Section 2254(d)(1). Vannoske instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis.

## DISCUSSION

Vannoske raises two grounds in his application for habeas relief. In Ground One, Vannoske claims that in violation of his constitutional rights his trial counsel prevented the presentation of his insanity defense. In Ground Two, Vannoske claims that counsel provided ineffective assistance by allowing Vannoske to stand trial while he was incompetent. The respondent argues that Vannoske fails to meet his burden under the AEDPA standard on his alleged claims of ineffective assistance of counsel.

**Ground One**:

In Ground One, Vannoske argues that he received deficient performance from both trial and post-conviction counsel. Vannoske alleges that he was denied

an opportunity to present an insanity defense due to the constitutionally deficient performance of his trial counsel. Vannoske argues that his insanity defense was the only defense available. He further asserts that by refusing to present the insanity defense to the jury, trial counsel violated his Fifth, Eighth, and Fourteenth Amendment rights. Vannoske claims (1) that, if counsel had presented supporting evidence, an insanity defense would have succeeded and (2) that trial counsel's failure was deficient performance under *Strickland*.

Vannoske's claim in Ground One lacks merit. Trial counsel did not assert the insanity defense because no evidence supported the defense. Trial counsel hired an expert, Dr. Carpenter, to evaluate whether Vannoske's mental state at the time of the offenses could support an insanity defense. Dr. Carpenter opined that Vannoske was sane at the time of the underlying criminal offense. The post-conviction court found that trial counsel's decision to not pursue the insanity defense was reasonable. At the post-conviction evidentiary hearing trial counsel testified as follows (Ex. 9, at 194–96):

> [Prosecutor]: As you know we're here on the specific issue of whether or not there was a failure to raise an insanity — viable insanity defense at the time of trial. As part of the development of strategic defenses for Mr. Vannoske can you tell me whether or not you considered an insanity defense?
>
> [Trial Counsel]: Yes.
>
> [Prosecutor]: Okay.

[Trial Counsel]: Mr. Vannoske had a number of mental issues. Because of that he was evaluated for competency and spent some time at Florida State Hospital to address his competency issues.

At the time this case was going on we had a mental health expert on our staff named Marcia Perlin who was one of our attorneys. I consulted with her. She reviewed the mental health records in Mr. Vannoske's case and she opined that she didn't think there was a viable insanity defense in the case. However, out of abundance of caution, she recommended that we hire a confidential expert to address that issue.

We did hire Dr. Carpenter and one of the things we asked him to do was to address the on-going issue of his competency, but also to specifically evaluate him for insanity at the time of the offense.

[State]: Okay so it is my understanding that your office, with you included, in preparation for trial did review an analysis of the defendants history, the facts of the case, competency reports that had been performed on behalf of the defendant, and a decision was made to retain Dr. Carpenter to not only reach a decision as to competency but also on the issue of whether or not an insanity defense was viable, is that correct?

[Trial Counsel]: Yes.

[State]: Okay. I'm showing you a report that is date — well, it's received by the Public Defender's Office on January 25, 2010. I don't see a date on it. Excuse me January 10, 2010. Do you recognize this?

[Trial Counsel]: Yes.

[State]: Okay and how do you recognize it?

[Trial Counsel]: This is a copy of the confidential report that was received from Dr. Carpenter that's a part of our file.

[State]: Okay. And did you have a chance to review the report prior to trial?

[Trial Counsel]: Yes.

[State]: Okay. And did that report have — was it of any import in to you reaching a decision of trial strategy?

[Trial Counsel]: Yes.

[State]: In what [w]ay?

[Trial Counsel]: In order to pursue an insanity defense one of the things you have to have is an expert who would be available to testify at the trial as to that experts opinion on whether the individual was insane at the time of their offense. After reviewing the records and interviewing Mr. Vannoske, Dr. Carpenter indicated that he did not feel that there was a basis upon which to assert that he meets the standard for an insanity plea. So lacking an expert, that was not one of the strategies we utilized in going forward with this case.

Trial counsel further testified that he discussed the insanity defense with Vannoske and that he informed him that the evidence would not support the defense. (Ex. 9, at 197).

The post-conviction court noted that trial counsel hired an expert to determine if the insanity defense was feasible and that Dr. Carpenter found after his examination of Vannoske the defense unsupported. After hearing testimony and reviewing the record, the post-conviction court concluded that trial counsel was not deficient under *Strickland*, and the state appellate court affirmed. (Doc. 9, at 138–43)

Whether to pursue an insanity defense is a strategic decision. *Chandler,* 218 F.3d at 1313. Vannoske argues that trial counsel unreasonably forbore the insanity defense. However, a tactical decision by trial counsel amounts to ineffective assistance only if no competent attorney would have chosen that patently unreasonable strategy. *Adams v. Wainwright*, 709 F. 2d 1443, 1445 (11th Cir. 1983).

In this instance, trial counsel considered both Vannoske's past and his mental health, and counsel obtained an evaluation by a qualified expert, who opined that Vannoske was sane at the time of the offense. Based upon a review of Vannoske's records and Dr. Carpenter's opinion, the post-conviction court's determination — that trial counsel reasonably decided not to pursue the insanity defense — was not unreasonable under *Strickland*.

Vannoske also argues that post-conviction counsel was ineffective because he should have presented more evidence to support his insanity defense. Vannoske avers that post-conviction counsel should have argued that Dr. Gamache and Dr. Northrup, both of whom initially found him incompetent, could have extrapolated an opinion about sanity from an earlier opinion about competence and testified to Vannoske's insanity. Vannoske continues that, even if he had no expert testimony to support his insanity defense, post-conviction counsel should have allowed his parents to testify at the evidentiary hearing that based on their observations of his behavior he was insane. Vannoske argues that under *Martinez v. Ryan*, 566 U.S. 1 (2012), post-conviction counsel was ineffective for not presenting at the post-conviction hearing the additional evidence that he claims would have established his insanity defense.

Vannoske's reliance on *Martinez* is misplaced. *Martinez*, 566 U.S. at 17, holds that "[w]here, under state law, ineffective-assistance-of-trial-counsel claims must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing those claims if, in the initial-review collateral

proceeding, there was no counsel or counsel in that proceeding was ineffective." *Martinez* also holds that Section § 2254(i) precludes an applicant from relying on any other ineffectiveness of his post-conviction counsel as a ground for habeas relief. Consistent with *Martinez* and Section 2254(i), as construed by *Martinez*, Vannoske can argue that post-conviction counsel was ineffective for failing to raise the ineffectiveness of Vannoske's trial counsel.

Vannoske does not argue that post-conviction counsel failed to raise the issue of ineffective assistance of trial counsel. Vannoske argues that post-conviction counsel failed at the post-conviction hearing to present sufficient evidence to support his claim. Specifically, Vannoske suggests that post-conviction counsel was deficient because he could have called lay witnesses to testify or could have attempted to extrapolate the conclusion of insanity from the opinions of the experts who examined him for competency. However, the governing test for ineffectiveness is not whether counsel could have done more; perfection is not required. *Chandler,* 218 F.3d at 1313. Nor is the test whether the best criminal defense attorneys might have done more. Instead the test is whether the defense was within the "wide range of reasonable professional assistance." Finally, Vannoske's claim alleges the violation of a legal right only during the state collateral proceeding. This offers no basis for habeas relief. *Quinn v. Crosby*, 360 F. 3d 1259, 1266 (11th Cir. 2004).

Finally, even if cognizable on habeas review, post-conviction counsel's decision to not present Vannoske's evidence — evidence that was not presented at

trial — was not deficient performance.  Vannoske's proposed evidence is based on speculation about the expert testimony of lay witnesses and on speculation about what, if anything, an extrapolation from an expert opinion on incompetency might prove.  Mere speculation about the testimony of witnesses who failed to testify is insufficient to establish ineffective assistance of counsel under *Strickland*.  *See Johnson v. Alabama*, 256 F. 3d 1156, 1187 (11th Cir. 2001) (stating that Johnson only offers speculation that the missing witnesses might have been helpful and that this kind of speculation is insufficient to carry the burden of a habeas corpus petitioner).

Vannoske fails to demonstrate that post-conviction counsel's representation fell below an objective standard of reasonableness — that is, that counsel's performance was unreasonable "under prevailing professional norms . . . considering all of the circumstances." *Strickland,* 104 S. Ct. at 2064–65.  Having failed to show deficient performance or resulting prejudice as required by *Strickland*, Vannoske is not entitled to relief on Ground One.

**Ground Two**:

In Ground Two, Vannoske claims that he was denied the effective assistance of counsel because he was not competent to stand trial.  Vannoske did not specifically raise this issue in his Rule 3.850 post-conviction motion.  However, he used the terms "incompetence" and "the insanity defense" interchangeably at times in his Rule 3.850 motion.  Based upon the record and Vannoske's arguments, the post-conviction court determined that Vannoske raised an insanity defense issue and not a

competency issue. Nevertheless, the competency issue, even though not specifically asserted, was thoroughly addressed during the post-conviction proceeding.

Vannoske acknowledges that he was found competent to stand trial two months before his trial. However, Vannoske claims that he decompensated and was incompetent when his trial began. Vannoske argues that both counsel and the court were aware that "his grip on reality had slipped" and that he could no longer assist his attorney. Vannoske admits that this claim of incompetence was not fully presented to the post-conviction court; under *Martinez*, he blames the failure on ineffective assistance of counsel.

Contrary to Vannoske's claim, the trial court throughly considered Vannoske's competency. The trial court ordered Vannoske examined by two experts to determine his competency to stand trial. Although Dr. Michael P. Gamache, Ph.D., and Dr. George M. Northrup, M.D., found Vannoske incompetent, both opined that he was restorable with treatment. (Ex. 1, Vol. I at 36, 52). The trial court issued an order finding Vannoske incompetent to stand trial and committed him to the custody of the Department of Children and Families (DCF) for treatment. DCF committed Vannoske to the Florida State Hospital, at which he received treatment. (Ex. 1, Vol. I at 36, 52).

After several months of treatment at the Florida State Hospital, Dr. Sandi Lewis, Ph.D., and Dr. Stephen Kopetskie, Ph.D., found Vannoske competent to stand trial. (Ex. 1, Vol. I at 66, 67) Dr. Gamache, who had previously found

Vannoske incompetent, re-evaluated him and opined that he was competent to stand trial. (Ex. 1, Vol. 1, at 75). Dr. Gamache stated (Ex. 1, Vol. 1, at 75):

> In summary, reevaluation of this defendant reveals improvement in his clinical presentation since first evaluated in March of this year. Mr Vannoske appears stable at this time on psychotropic medications. He now displays both a rational and factual understanding of the proceedings against him. Therefore, it is my recommendation to the Court that he be found competent to proceed.

Vannoske's expert, Dr. Carpenter, opined that Vannoske was competent to stand trial. (Ex. 9, at 195). As a consequence, trial counsel did not argue at the beginning of trial that Vannoske was incompetent to stand trial.

The available evidence uniformly confirmed Vannoske's competency to stand trial. An attorney is not ineffective for failing to raise or preserve a meritless issue. *Ladd v. Jones*, 864 F.2d 108, 109–10 (11th Cir. 1989); *United States v. Winfield*, 960 F.2d 970, 974 (11th Cir. 1992) ("a lawyer's failure to preserve a meritless issue plainly cannot prejudice a client"). Accordingly, the post-conviction court found trial counsel was not ineffective for not raising the issue of Vannoske's competence at trial.

In sum, post-conviction counsel was not ineffective under *Martinez* for not raising Vannoske's competency. Vannoske did not specifically raise competency in his Rule 3.850 motion; however, trial counsel testified at the post-conviction evidentiary hearing about Vannoske's competency. Trial counsel testified that Dr. Carpenter was hired to specifically review Vannoske's competency to stand trial and

to determine whether Vannoske was insane at the time he committed the offenses at issue. (Ex. 9, at 197). Dr. Carpenter found Vannoske competent to stand trial. (Ex. 9, at 197). While Vannoske claims he "decompensated" and returned to being incompetent after Dr. Carpenter's examination, no evidence supports such a claim. In fact, the evidence at both his trial and his post-conviction evidentiary hearing supports a contrary conclusion. Vannoske simply makes an unsupported claim that he decompensated and was not competent when his trial started. Vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim. *Tejada v Dugger*, 941 F. 2d 1551, 1559 (11th Cir. 1991). Vannoske fails to establish that post-conviction counsel acted unreasonably, as such, the post-conviction court did not err by finding that trial counsel was not ineffective under *Strickland*. Vannoske is not entitled to relief on Ground Two.

## CONCLUSION

Vannoske fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), recognizes, an applicant's burden under Section 2254 is very difficult:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility

for fairminded disagreement." *Harrington v. Richter*, 562 U.S.
[86, 103] (2011). "If this standard is difficult to meet" — and it
is — "that is because it was meant to be." *Id.*, at [102]. We will
not lightly conclude that a State's criminal justice system has
experienced the "extreme malfunctio[n]" for which federal habeas
relief is the remedy. *Id.*, at [103] (internal quotation marks
omitted).

Additionally, this order renders moot Vannoske's motion (Doc. 25) for a ruling

on his application.

Accordingly, Vannoske's application for the writ of habeas corpus (Doc. 1) is

**DENIED**.  Vannoske's motion for miscellaneous relief (Doc. 25) is **DENIED AS**

**MOOT**.  The clerk must enter a judgment against Vannoske and close this case.

**DENIAL OF BOTH**
**A CERTIFICATE OF APPEALABILITY**
**AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Vannoske is not entitled to a certificate of appealability ("COA").  A prisoner

seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's

denial of his application.  28 U.S.C. § 2253(c)(1).  Rather, a district court must first

issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has

made a substantial showing of the denial of a constitutional right."  To merit a COA,

Vannoske must show that reasonable jurists would find debatable both the merits of

the underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C.

§ 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d

926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would

debate either the merits of the claims or the procedural issues, Vannoske is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is **DENIED**. Vannoske must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on June 30, 2017.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE